*370
 
 ROTHENBERG, J.
 

 The defendant, Morton’s of Chicago/North Miami Beach, LLC (“Morton’s”), appeals from an order granting a new trial to the plaintiffs, Enrique Bermudez (“Dr. Bermudez”) and Doris Bermudez (collectively, “the plaintiffs”), following the jury’s verdict finding Morton’s not liable for Dr. Bermudez’s fall at Morton’s premises, a restaurant. The trial court granted the new trial based on its rulings on motions in limine which precluded the plaintiffs’ experts, Robin Hale (“Mr. Hale”), an architect, and Dr. Michael Maddox (“Dr. Maddox”), a human factors expert, from testifying that Morton’s violated provisions of the Uniform Fire Code and Life Safety Code (“Life Safety Code”) and the Americans with Disabilities Act (“ADA”). As we conclude that based on the evidence presented at trial, the particular provisions of the ADA and Life Safety Code were totally irrelevant, we reverse and remand with instructions to reinstate the jury’s verdict.
 

 After Dr. Bermudez’s fall, the plaintiffs retained two experts: Mr. Hale and Dr. Maddox, who visited Morton’s and observed what they believed to be violations of certain provisions of the Life Safety Code and the ADA. Prior to trial, the trial court granted a motion in limine precluding Mr. Hale from testifying as to whether the temporary deviations he observed during his visit to Morton’s along the aisle where Dr. Bermudez had fallen, violated the Life Safety Code. Some of the temporary deviations he observed were patrons seated at tables who had pushed their seats out, and wine chillers and presentation tables which had been placed next to some of the tables. He claimed these temporary conditions constituted violations because they reduced the width of the aisle to under forty-four inches as required by the Life Safety Code. In addition, the trial court precluded Dr. Maddox from testifying that based on his interpretation of the ADA, Morton’s violated the ADA by allowing booth legs at the restaurant to protrude past the table tops by one to three inches.
 

 At trial, the uncontroverted evidence was that Dr. Bermudez, who is eighty-four years old, fell on September 20, 2008, at approximately 6:45 p.m., as he was walking down the main aisle of the restaurant between tables 31 and 41. The area of the main aisle where Dr. Bermudez fell is comprised of both tables and booths, with booths on the right side, numbered as 20, 30, and 40, and tables on the left side, numbered as 21, 31, and 41. When Dr. Bermudez fell, there were only twenty-three to twenty-five patrons at the restaurant, which seats 212 persons, and of these six tables and booths, only booth number 40, which is located after tables 31 and 41, was occupied. Booth 40, the only table occupied along the aisle Dr. Bermudez walked down, was, however, not implicated. There were no wine chillers or presentation tables in the aisle.
 

 The only eyewitness to the fall testified that Dr. Bermudez walked with an unsteady gait and shaky hands. While walking down the aisle, Dr. Bermudez used a chair at table 21, which is located on the left side of the aisle and away from the booths, to steady himself. As he approached table 31, he reached for another chair, and then fell to the ground between tables 31 and 41, with the chair landing on him. Although Dr. Bermudez initially told the paramedics that tended to him at Morton’s that he tripped on the carpet, and later told emergency personnel at the hospital that he tripped on a chair, he testified at trial that he fell after his foot hit something hard, but he could not identify what his foot hit. Although Mr. Hale and Dr. Maddox testified that they observed temporary deviations which they believed con
 
 *371
 
 stituted a violation of the Life Safety Code or the ADA when they visited Morton’s on a night subsequent to Dr. Bermudez’s fall, the uncontroverted evidence at trial was that the area of the aisle where Dr. Ber-mudez fell was clear of any temporary deviations — in other words, no patrons had pushed out their chairs, and there were no wine chillers, presentation tables, etc. in the aisle where Dr. Bermudez fell.
 

 Based on the facts of this case, as well as the law, we conclude that the trial court’s initial analysis and pretrial rulings excluding the testimony were correct, and its subsequent change in position was error. Thus, we conclude that the trial court abused its discretion by granting a new trial. First, the premise relied on by Dr. Maddox, that the booth leg protruded past the table top by one to three inches, and was thus an ADA violation, was proven to be false. Booth 30 was produced at trial and measured, and the plaintiffs’ experts admitted that the booth leg did not protrude past the table top as they initially opined. Second, the uncontroverted evidence showed that the alleged code violations were not present when Dr. Bermudez fell. Thus, the proffered testimony of Mr. Hale and Dr. Maddox — that Morton’s violated provisions of the Life Safety Code and the ADA on a date subsequent to the date of Dr. Bermudez’s fall — had no bearing on this case. It is undisputed that there were no “temporary deviations” in the aisle when Dr. Bermudez fell or that the aisle was less than forty-four inches wide.
 

 Lastly, we note that, although the trial court ruled that Dr. Maddox and Mr. Hale were not to testify that based on their observations they believed Morton’s violated certain provisions of the ADA and the Life Safety Code, the plaintiffs’ experts did testify as to their observations during their visits at Morton’s and the requirements provided by the ADA and the Life Safety Code, and they did render opinions as to what violations they believed existed. For example, the experts testified that, pursuant to the Life Safety Code, the aisle must be at least forty-four inches wide; temporary deviations (wine chillers, presentation tables, etc.) decrease the width of the aisle; the encroachment of more than one quarter of an inch for booth legs constitutes a “tripping hazard”; and although they initially testified that the booth legs at Morton’s encroached between one to three inches, they admitted at trial they were incorrect. Further, photographs of the restaurant taken months after Dr. Bermudez fell, which depict items encroaching into the aisle (wine chillers, presentation tables, chairs, etc.), were introduced into evidence, although it is undisputed that on the night that Dr. Bermu-dez fell, these items were not present in the area of the aisle where Dr. Bermudez fell. Therefore, even if the trial court improperly limited Dr. Maddox’s and Mr. Hale’s testimony, which we conclude the trial court did not, the error would be harmless because the plaintiffs cannot demonstrate substantial prejudice.
 
 See Midtown Enters., Inc. v. Local Contractors, Inc.,
 
 785 So.2d 578 (Fla. 3d DCA 2001). Accordingly, we reverse and remand with instructions to reinstate the jury’s verdict of no liability.
 

 Based on our resolution, we find it unnecessary to address Morton’s remaining arguments on appeal.
 

 Reversed and remanded.